## McCotter v. Lawrence.

*Parties — in action for specific performance of real estate contract — all interested must be joined. Statutes of limitation — action to enforce specific performance limited to ten years — when cause of action accrues — parol promise does not bar statute — possession will not prevent statute running.*

In an action to enforce the specific performance of a contract to sell land, a part only of those interested in its enforcement were joined as parties. *Held,* that the action could not be sustained. The law will not tolerate a suit to enforce a contract by piecemeal.

The contract to sell was made in 1853, and was to be performed within three years. *Held,* (1) that the time to commence an action to enforce the same was limited to ten years after the cause of action accrued ; (2) that such cause accrued in 1856 ; that a demand was not necessary before bringing action, and the statute began to run in that year ; and (3) that a parol promise to extend the time of performance would not bar the statute.

The plaintiff had not paid the price agreed, but had obtained possession of the lands contracted to be conveyed. *Held,* that this would not prevent the statute running. It is only where the vendee has become entitled to a specific performance, by reason of full performance on his part, that the vendor is not allowed to interpose the statute as an obstacle to the vendee's right to have his title perfected.

APPEAL by defendants from a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought by Francis H. McCotter against Andrew Lawrence, executor, etc., of Abraham R. Lawrence, deceased, and others to enforce the specific performance of a contract for the sale of real estate. The facts were these: In January, 1853, Abraham R. Lawrence and Alexander McCotter entered into an agreement,

under seal, bearing date the 22d day of that month, for the sale to and purchase, by said Alexander McCotter, of forty-five acres of land for the price of $22,250, to be paid as follows : $5,000 June 1, 1853; $5,000 September 1, 1853, and the remaining ,$10,250 might, at the option of the purchaser, remain unpaid for three years from the date of the agreement, the purchaser executing a bond for the same, secured by mortgage and insurance upon the premises. Among the provisions of the agreement was this:

"As it is the intention of the party of the second part to subdivide the forty-five acres into small lots and dispose of such subdivisions, either all or in part before the term of payment above-mentioned shall have expired, and with this intention, will not require a deed to be executed by the party of the first part until the conditions of payment herein promised be fulfilled ; and as it may be desirable, in completing this concern, that separate deeds be given by the party of the first part to whomsoever may become purchasers of the subdivisions, the party of the first part consents to execute such deeds, provided that, at the expense of the party of the second part, a correct map be prepared for record at the clerk's office in the county of Queens, and the deeds and vouchers connected with the conveyance be prepared and all expenses paid by the party of the second part."

After the making of the contract, Alexander McCotter divided the forty-five acres into 154 lots. One hundred and three of these lots were separately conveyed by Abraham R. Lawrence to various persons designated by said purchaser. Nearly all of these deeds were executed in July, 1853. About that time Alexander McCotter entered into possession of the unconveyed lots. Deeds of lots were executed in 1859, 1860 and 1861, and in 1861 four lots previously conveyed to Alexander McCotter were conveyed by plaintiff to Abraham R. Lawrence in exchange for four lots at the same time conveyed by Lawrence to one Pratt.

Fourteen thousand dollars were paid on the contract in 1853, and $5,000 more in 1855. No other payments were ever made and no conveyance other than of the lots above mentioned was ever made. Abraham R. Lawrence died in 1863. McCotter continued in possession of the unconveyed lots, paid taxes, and exercised the rights of ownership with reference thereto, until the commencement of this action. Plaintiff claimed title to one-half interest in the contract of sale by a conveyance from Alexander McCotter. It was

alleged that the other half interest was conveyed by said Alexander to one Cornell ; that Cornell conveyed one-half his interest to one Pentz ; that one Barker, as assignee for the benefit of creditors of Pentz, conveyed his interest to one Clute ; that the administratrix of Cornell conveyed his interest to Clute, and Clute conveyed the entire interest acquired by him to plaintiff.    The only proof of the authority of Barker to convey the interest of Pentz was an assignment from Pentz to Barker and another.    Defendant claimed that both the conveyance from Barker and that from the administratrix of Cornell were without authority, and that plaintiff had no title to the one-half interest conveyed by Alexander McCotter to Cornell.

Andrew Lawrence, sole executor under the will of Abraham R. Lawrence, in 1866 conveyed all the unconveyed lots to The New York Life Insurance and Trust Company, in trust for certain persons named therein.

The referee found that plaintiff was entitled to a conveyance of the lots unconveyed upon payment to the New York Life Insurance and Trust Company of the sum due on the contract, and directed that a deed be executed to her upon making such payment.    Other facts appear in the opinion.

*J. S. Lawrence, B. J. Blankman* and *B. Robinson,* for appellants.

*John E. Parsons,* for respondent.

Present — BARNARD, P. J., GILBERT and TAPPEN, JJ.

GILBERT, J.    Setting aside many considerations which might influence our discretion in granting or refusing a decree in this case, if the plaintiff were otherwise entitled to a specific performance of the contract, we are of opinion that the judgment appealed from cannot be sustained upon any ground, legal or equitable.

The legal title to the lands in controversy is unquestionably vested in the New York Life Insurance and Trust Company.    The plaintiff proved nothing more, at the utmost, than an equitable title to an undivided moiety thereof ; and yet, on that proof alone, she has obtained a judgment, which, if affirmed and executed, would divest the New York Life Insurance and Trust Company of its whole estate in the lands.

This bare statement of the result of the trial, I am sure, is sufficient to demonstrate that the judgment is erroneous.

Those in whom the equitable title to the other moiety is vested were necessary parties plaintiff. A decree cannot, with any show of justice to the defendants, be made without their presence. The law will not tolerate a suit to enforce a contract by piecemeal. All who are interested in having a contract performed, must join in a suit therefor, or a valid excuse for their not joining with the plaintiff must be shown. The statute on this subject is imperative, and is merely declaratory of a very ancient rule. Code, § 119. This proposition seems to be incontestible, and in a case like this ought to be rigorously enforced, because it is manifest that the court cannot determine the controversy before it, without prejudice to the rights of the defendants, as well as those of the absent plaintiffs, if, indeed, any of the parties have any rights under the contract.

The attempt made by the referee to obviate the objection arising from the defect of parties, by directing a conveyance to be made to the plaintiff and her co-owners, and their assigns, without naming them, cannot be sanctioned. If they retain their interest under the contract, they have a right to elect whether they will accept a specific performance or sue for damages for a breach of the contract. The plaintiff cannot make that election for them. They could not, it is true, sue alone; yet, if an action at law for such damages should be brought by all the parties interested in the contract, the judgment in this suit would not be a bar thereto. That judgment, therefore, affords no protection to the representatives of the vendor against the exercise of that right. Nor would the conveyance ordered be equivalent to a performance of the contract as to such co-owners, even if we might assume that they preferred land to money, for the reason that the judgment does not establish their rights. Another adjudication would be necessary to ascertain who were intended as grantees, or the persons answering to the description of them contained in the conveyance, and to determine their respective interests. Furthermore, the New York Life Insurance and Trust Company has a clear right to remain vested with its legal title until a paramount claim on the part of such co-owners shall have been successfully asserted by them.

We think, moreover, that the right of action upon the contract has been barred by the statute of limitations. The case is within

section 97 of the Code, which provides that the suit must be commenced within ten years after the cause of action accrued. It has been settled by a series of decisions that the cause of action in equity of a vendee, in an executory contract for the sale of lands, accrues whenever he becomes entitled to sue for a specific performance of the contract. No demand or tender of performance, on his part, is necessary before instituting such a suit, but an offer to perform made in the complaint, and ability to perform at the time of the decree, are all that is requisite. *Bruce* v. *Tilson*, 25 N. Y. 194; *Peters* v. *Delaplaine*, 49 id. 362. And the statute begins to run without any formal denial on the part of the vendor of the right of the vendee. In *Peters* v. *Delaplaine*, *supra*, there was no denial of the vendee's right, but there was only a failure to perform by the vendor, because his wife refused to sign the deed to be given by him. Upon the principle stated, the cause of action upon this contract accrued in January, 1856, and the suit was not commenced until October, 1870. We are unable to perceive why, if the plaintiff has any cause of action now, she, or those under whom she claims, had not the same cause of action, at any and all times between January, 1856, and January, 1866. Although neither of the parties to the contract chose to exercise the rights given by it, that fact did not postpone the accruing of the cause of action. *Roberts* v. *Sykes*, 30 Barb. 177. Nor did the demand for a conveyance made after the death of the vendor avoid the bar of the statute or create a new cause of action. *Tilson* v. *Bruce*, 25 N. Y. 196.

The referee has not found that the time for the performance of the contract by the vendor was extended, nor is there any evidence that it was extended. The declaration made to Mr. McMahon by the vendor, that the vendee "need not trouble himself about any thing he owes me," etc., did not have that effect, independently of the objection that it was not in writing, which will be noticed hereafter. At the utmost it was a mere postponement of the exercise of the vendor's present right to enforce the contract against the vendee, but it did not take away or affect any right which the vendee had against the vendor. The referee strained the evidence when he called it an agreement, that the balance due on the contract might remain pending the appeal. But if it was an agreement, it was *nudum pactum*.

The referee denied the appellant's motion to dismiss the com-

plaint, made upon the ground that the suit was barred by the statute of limitations, but did not state any reason therefor, nor did he find any of the facts upon that subject. He evidently placed his decision, that the suit had not been barred, upon the supposed agreement made through McMahon, before mentioned, and upon the following facts reported in the findings, namely : That shortly after the contract the vendee entered into possession of the premises in controversy, and continued to be in possession thereof and to exercise ownership over the same down to the commencement of this suit ; and that he paid taxes thereon and expended considerable sums of money in opening and grading streets, and other improvements ; that the vendor died August 3, 1863, and down to his death no proceedings were taken by him, so far as appeared, either to require payment of the balance due upon the contract, or to divest any rights under it, and that he had as late as on or about April 16, 1861, and from time to time down to that date, continued to execute conveyances of parts of said premises at the instance of the vendee.

Parol admissions and acts *in pais* are no longer sufficient to prevent the operation of the statute of limitations. For by section 110 of the Code, it is provided that no acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of its operation, unless the same be contained in some writing signed by the party to be charged thereby. The only writing signed by the vendor within ten years before the commencement of this action is a deed, dated April 16, 1861, to one Herring. But that has no legal significance here as a written acknowledgment, because it was made merely to effect an exchange of lots which the vendor had conveyed in 1853, for the lots described in the deed. It was not in any sense a transaction based on the continued obligation of the contract, but a substitute for an old one, done while the contract by its terms was in force.

Nor is the case materially affected by the question of the possession of the lots which have not been conveyed. It is only where the vendee has become entitled to a specific performance of the contract by the vendor, by reason of a full performance thereof by the vendee, that the vendor will not be allowed to disturb his possession, or to interpose the statute of limitations as an obstacle to his right to have his equitable title perfected by a conveyance of the legal estate. *Miller* v. *Bear*, 3 Page, 466 ; *Bruce* v. *Tilson, supra.*

In such a case the decree enforces a trust rather than a contract. The court would afford the same relief if there were no formal contract.

It may not be amiss to remark, however, that, in our opinion, the fact that possession was taken by the vendee under the contract was not sufficiently proved. Possession was not provided for in the contract. The consent of the vendor, therefore, was necessary to effect any valid change of possession. The only witness on this subject was the vendee, and he was not a competent witness to prove such consent. Code, § 399.

The provision of the Code requiring a written acknowledgment to take a case out of the statute of limitations has effectually destroyed the old doctrine on which courts of equity relieved vendees from forfeitures incurred in consequence of their failure to perform executory contracts for the sale of lands. That doctrine rested on the principle that time was not of the essence of the contract. But now the statute has interposed an absolute bar after the lapse of ten years. It would be a violation of this statute to give to the acts of the vendor referred to such an effect as would suspend its operation. The statute itself provides that the time during which certain specified disabilities may continue shall not be computed; but none of those acts are included among them. A court of equity has no more power to dispense with a statute than a court of law. Story's Eq. Pl., §§ 751–831. When they have apparently done so, it has been upon the idea that the facts of the particular case took it out of the statute. *Wetmore* v. *White,* 2 Cai. Cas. 109; *Rhodes* v. *Rhodes,* 3 Sandf. Ch. 279. Contracts which could not be enforced at law, because they were not made conformably to the statute of frauds, have been rendered effective by courts of equity on that ground, and by our statute of frauds; the right to do this is expressly reserved to those courts by the proviso that nothing therein contained shall be construed to abridge their powers to compel the specific performance of agreements in cases of part performance thereof. 2 R. S., § 10. It must be presumed that, if the legislature had intended to authorize a like exception in the statute of limitations, they would have inserted in it a similar proviso. However that may be, I know of no principle that would justify the court in refusing to execute a statute in a case clearly within its provisions.

We must, therefore, hold the law to be that, with the exception

McCotter v. Lawrence.

of cases where the contract has been fully performed on the part of the vendee, or there has been a waiver by the vendor of the benefit conferred by the statute of limitations, neither part-performance, nor any other considerations which have heretofore actuated courts of equity in decreeing the specific performance of contracts, notwithstanding the lapse of time, can be allowed as an answer to the peremptory bar created by section 97 of the Code, without the written evidence required by section 110 of the Code.

For the part-performance in this case the vendee received an equivalent in the life-time of the vendor, by a conveyance of nearly two-thirds of the property agreed to be conveyed, upon making payments, amounting in the aggregate to no more than a proportionate part of the price. The referee, we think, erred in respect to the payments by giving the vendee credit for property which, although originally taken by the vendor in payment, was returned to the vendee and retained by him. Making allowance for this and for interest, the price of the land conveyed and the amount of the payments would be very nearly equal. The last payment on the contract appears to have been made in 1853, ten years before the death of the vendor. No suit having been instituted to obtain a conveyance of the remainder of the lots during a period of nearly fifteen years after the cause of action accrued, and of seven years after the death of the vendor, we think it would be inequitable to undo the bar of the statute, even if we had the power to do so, especially as rights of devisees and strangers have intervened.

We have considered several minor questions presented on the argument, but enough has been said to dispose of the case without discussing them.

The judgment must be reversed and the complaint dismissed, with costs.

*Judgment reversed.*